

# FRANKEL & NEWFIELD, P.C.

ATTORNEYS AT LAW

Justin C. Frankel*
Jason A. Newfield*

*Admitted in NY, CT and PA

July 2, 2009

585 Stewart Avenue
Suite 312
Garden City, NY 11530
Tel: (516) 222-1600
Fax: (516) 222-0513
www.frankelnewfield.com

**VIA ECF**

Honorable Ramon E. Reyes, Jr.
United States District Court
225 Cadman Plaza East, Room 263
Brooklyn, New York 11201

          Re:    Testa v. Hartford Life Ins. Co. and Marsh & McLennan Companies, Inc.
                U.S. D. Ct., E.D.N.Y. 08 CV 816 (FB) (RER)

Dear Judge Reyes:

    We represent Plaintiff in the above matter, an ERISA disability action challenging the termination of Plaintiff's disability benefits. This letter is respectfully submitted to address Hartford's belated effort to object to each and every category of topics for its Rule 30(b)(6) witness.[1]

    Despite Plaintiff writing to Hartford on January 20, 2009 concerning these issues (days after Your Honor's rulings)(Exhibit "A"), and despite Hartford indicating in a letter to Your Honor dated January 23, 2009 that it would be forwarding its specific objections to the Rule 30(b)(6) topics by January 30, 2009 (Exhibit "B"), and then furthering its commitment to provide objections, in an email of January 29, 2009 (Exhibit "C"), Hartford first lodged its objections by letter dated July 1, 2009 (Exhibit "D")[2].

    Thus, Hartford failed to comply with the Court's Order, and its own representations to Your Honor, for over five (5) months. Such conduct can only be viewed as recalcitrance, intransigence and a continuation of conduct recently found troublesome by Judge Kaplan. *Jacoby v. Hartford Life*, 2009 U.S. Dist. LEXIS 6498 (S.D.N.Y. 2009)(holding that Hartford's discovery responses "are a paradigm of discovery abuse.").

    Plaintiff contends that the failure to interpose objections timely serves to waive any objections. *Clemons v. Hartford Ins. Co.*, 2009 U.S. Dist. LEXIS 52056 (E.D. La. 2009). Nonetheless, Plaintiff has agreed to withdraw several of the topics (despite its position that Hartford has waived any objections), on the basis of Hartford not funding the benefits at issue in this case.[3]

---

    [1]    Counsel engaged in efforts to narrow the disputes during phone calls on July 1, and July 2, 2009. The parties hope to continue these efforts, but due to time sensitivities, needed to seek judicial intervention.

    [2]    For ease of the reader, we have not provided the underlying Notices, as they are encapsulated in Exhibit "D", which is the responses and objections from Hartford.

    [3]    Plaintiff has withdrawn topics 1, 5 and 14 from its Rule 30(b)(6) Notice.

There are, however, numerous topics which remain in dispute which Plaintiff has not agreed to withdraw, addressing areas of Hartford's relationship with third party vendors, statistics, performance incentives for Hartford personnel, claim handling guidelines, and the relationship between Hartford and CNA.[4]

The areas of inquiry concerning Hartford's relationship with third party vendors are discussed below, but has already been decided to have relevance for purposes of discovery, as significant paper discovery has been produced, including the vendor agreements, audit reports, TAT reports, and additional documentation that was secured through the third party witnesses. The Court has also ordered the production of the performance evaluations for Hartford employees, and thus, this is an appropriate area of inquiry for testimony.

The claim handling guidelines have also been produced and are thus an appropriate area for testimony. Thus, even absent Your Honor determining that Hartford has waived its objections to Plaintiff's Rule 30(b)(6) Notice, substantively, the remaining topics should be ordered.

Subsequently, Plaintiff served a supplemental notice for Rule 30(b)(6) topics on May 28, 2009, and thus, those areas of inquiry are subject to resolution by Your Honor, to the extent that the parties have not been able to agree. These topic areas include the following:

1. Hartford Procedures concerning MES Credential Audits;
2. Hartford Procedures concerning RRS Credential Audits;
3. Hartford's analysis of MES Credential Audits;
4. Hartford's analysis of RRS Credential Audits;
5. Hartford's Findings from MES Credential Audits;
6. Hartford's Findings from RRS Credential Audits;
7. Hartford's Follow up to Concerns from MES Credential Audits;
8. Hartford's Follow up to Concerns from RRS Credential Audits;

Hartford has advanced the position that these topics from Plaintiff's May 28, 2009 supplemental notice are outside the scope of permissible discovery.[5] Hartford further relies upon the Court's ruling of May 18, 2009 denying Plaintiff's efforts to secure the deposition of the third party vendors, MES Solutions and RRS. Lastly, Hartford objects on the grounds that the areas of inquiry are "overly broad and burdensome".

---

[4] As indicated in our letter to the Court on July 11, 2008, Defendant Marsh & McLennan has delegated authority to CNA, and not to Hartford - who acquired CNA. Thus, this area of inquiry is critical to Plaintiff's argument to the District Court concerning the standard of review.

[5] Hartford admits that it has previously produced the Credential Audit materials, and relies upon that fact to neuter Plaintiff's efforts to secure testimony regarding these issues.

FRANKEL & NEWFIELD, P.C.

Plaintiff's position on these topics is that they are plainly relevant, as is made clear by the fact that the underlying materials were ordered to be produced by Your Honor. The fact that the depositions of the third party vendors were not ordered has no impact upon the relevancy of the deposition of a party - to wit, Hartford, as to the topics involving the Credential Audit reports.

By way of example, if hypothetically an audit report indicated that one of its vendors (Vendor A) should not utilize Dr. X for some reason (say hypothetically because he was not Board Certified, or lacking the necessary qualifications to provide opinions), and then that very same doctor was utilized by Vendor B on a Hartford claim, it would likely be extremely probative evidence impacting upon a Court's consideration of Hartford's conduct.[6] At the very least, it would likely serve to call into question Hartford's reliance upon any such report.

Thus, testimony concerning the Credential Audit report and activities undertaken, or not undertaken, on the basis of these reports, is critical. Courts throughout the country have taken heed of the issue concerning the relationship between third party vendors such as MES and RRS and insurers like Hartford. *See Wright v. Raytheon Co.*, 2008 U.S. Dist. LEXIS 81951 (D. Az. 2008)(noting Met Life's extensive use of NMR considered evidence of bias); *Caplan v. CNA Fin. Corp.*, 544 F.Supp.2d 984, 991-92 (N.D. Cal. 2008)(noting Hartford's extensive use of UDC created an incentive for UDC to provide reports favoring Hartford); *Walker v. Met Life*, 585 F.Supp.2d 1167, 1175 (C.D. Cal. 2008)(ordering discovery as to the utilization of NMR, due to "critical gaps in the record" regarding the effect of insurer's conflict); and *Rabuck v. Hartford Life & Acc. Ins. Co.*, 522 F.Supp.2d 844 (W.D. Mich. 2007).

The objections on the grounds of being overbroad and/or undue burden appear to be a common theme by Hartford, one that was soundly rejected by Judge Kaplan in *Jacoby*.

        Respectfully Submitted,

        FRANKEL & NEWFIELD, P.C.

By: _____
     Jason Newfield (JN5529)

JAN/bms
Enclosures
cc:    Kevin G. Horbatiuk, Esq. & Natan Hamerman, Esq. (via ECF)

---

[6] The Vendor Audit materials produced by Hartford are subject to a Confidentiality Order, and are thus not to be filed with the Court, except under seal. Should Your Honor wish to review any of the documentation, Plaintiff will gladly submit it either under seal or *in camera*.